# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
                                    )
UNITED STATES OF AMERICA,           )
                                    )
             v.                     )    CRIMINAL ACTION
                                    )    NO. 04-1755-CBS
MICHAEL E. GREEN,                   )
ANDRE PAGE,                         )
AQUAYA STEPHANIE PERRY, ET AL )
         Defendants,                )
                                    )
```

## MEMORANDUM OF PROBABLE CAUSE AND
## ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION
### June 17, 2004

**SWARTWOOD, M.J.**


I.   Nature of the Offense and the Government's Motion

On June 7, 2004, a Criminal Complaint was filed charging Michael E. Green ("Mr. Green"), Andre Page ("Mr. Page"), Aquaya Stephanie Perry ("Ms. Perry")(collectively "Defendants") and another, with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846 and attempting to possess cocaine with intent to distribute, in violation of 21 U.S.C. §841(a)(1).

On June 7, 2004, the Defendants appeared before me for their initial appearance and were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the

Government moved for a detention hearing in accordance with 18 U.S.C. §§3142 (f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment,)(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act") and (f)(2)(A)(risk of flight).

On June 9, 2004, a consolidated probable cause/detention hearing was held with respect to these three Defendants and at that hearing, Peter Darling, Special Agent with the Department of Homeland Security, Customs and Immigration Enforcement ("ICE"), testified on behalf of the Government and was cross-examined by Defendants' counsel. At the end of this hearing, Ms. Perry was released on conditions.

## II. <u>Findings of Fact</u>

1. In March 2004, an undercover agent ("UCA") was utilized to smuggle a large amount of cocaine from Guyana to Boston, Massachusetts. <u>Govt. Ex. 1</u>. This investigation involved Title III wire intercepts and consensually recorded telephone conversations. Eventually, the UCA made arrangements to meet on June 5, 2004 with Wallstein Dwayne Allen, a co-Defendant and the primary target of this investigation. The meeting was to take place in Boston, Massachusetts, at a restaurant at the Prudential Center for the purpose of making arrangements for delivery of over 100 kilograms

of cocaine and to pay the UCA for his services in delivering the cocaine from Guyana to Boston. Id.

2.    On Saturday, June 5, 2004, law enforcement surveillance agents observed a silver Chevrolet Suburban and gold Chevrolet Trailblazer arrive at the Prudential Center. Shortly thereafter, agents observed Messrs. Allen, Green and Page and Ms. Perry emerge from the parking garage into the mall area, where they did some shopping and then went to a restaurant where Mr. Allen met with the UCA. While Mr. Allen met with the UCA, Messrs. Green and Page and Ms. Perry got something to eat and sat at separate tables in the restaurant. Id.

3.    At some point, Mr. Allen concluded his conversations with the UCA. Mr. Allen then reassembled with Messrs. Green and Page and Ms. Perry and they went to the Prudential parking garage. The group left the parking garage with Messrs. Green and Allen in the Trailblazer and Mr. Page and Ms. Perry in the Suburban.

4.    Approximately 200 yards outside of the Prudential parking garage, the Suburban and the Trailblazer met up with the UCA in his vehicle. At that time, Mr. Allen agreed to travel with the UCA and a female (another undercover agent whom the UCA identified as his girlfriend) to pick up the cocaine. Before getting into the UCA's automobile, Mr. Allen retrieved two bags containing $200,000 in cash from the Trailblazer which was be paid to the UCA for his services in bringing cocaine from Guyana to Boston.

5.    The UCA's vehicle then departed followed by the Trailblazer and the Suburban.  Upon arriving at a warehouse in East Boston, the female agent and Mr. Allen drove the UCA's vehicle into the warehouse and the UCA drove the Trailblazer with Mr. Green as a passenger into the warehouse.  Mr. Page and Ms. Perry remained in the Suburban at the end of a drive leading to the warehouse.

6.    The female agent then left the warehouse with the bags containing the $200,000 and was instructed to return with coffee. The UCA, Messrs. Allen and Green then examined one kilogram of cocaine and thereafter, transferred seven bags containing approximately 105 kilograms of cocaine into the Trailblazer.  At this point, federal agents arrested Mr. Page and Ms. Perry, who were still in the Suburban at the end of the drive leading to the warehouse.  Messrs. Allen and Mr. Green were also arrested. Following these arrests, federal agents retrieved 105 kilograms of cocaine carefully wrapped in waterproof wrapping and placed in large carryall bags (Govt. Exs. 2-5) and the $200,000 that Mr. Allen had delivered to the UCA (Govt. Ex. 6).

7.    A confidential witness ("CW") has informed law enforcement officials involved in this investigation that Mr. Page was recruited by Mr. Allen in New York for the trip to Boston because he was of intimidating size, had been known to Mr. Allen for some time and was willing to make the trip from New York to Boston for payment of between a quarter and a half a kilogram of cocaine.

8.    Mr. Green is a long-time friend of Mr. Allen from Brooklyn, New York and was recruited a day or two before the trip from New York to Boston to assist Mr. Allen in picking up the cocaine.  For his services, Mr. Green was to be paid between a quarter to a half a kilogram of cocaine.

9.    Ms. Perry's cousin had requested that she drive Mr. Allen from New York to Boston because Mr. Allen did not have a license. Although Ms. Perry was never told by anyone that the purpose of the trip was to purchase cocaine, at some point before going to the warehouse, she suspected, because of Mr. Allen's reputation as a drug dealer, that this trip involved a drug deal.  Ms. Perry was to receive $300 for driving Mr. Allen from New York to Boston.

## III.    Probable Cause

These Defendants are charged with conspiracy to possess with intent to distribute cocaine and attempt to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§841(a)(1) and 846. Although there was no evidence that any of these Defendants were involved with Mr. Allen in making arrangements for the shipment of cocaine from Guyana to Boston, I find that there is probable cause for me to conclude that each one of these Defendants knew, either before coming to Boston or at some time prior to the drug transaction being completed, that Mr. Allen intended to take delivery of cocaine in Boston.  When these Defendants were arrested, 105 kilograms of cocaine was located in one of the vehicles these

5

Defendants used to drive from New York to Boston. Therefore, I find probable cause for the offense charged against these Defendants in this Complaint.

## IV. The Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095 has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the

6

Defendant poses a risk of flight.  See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562 (1986).  See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).  Furthermore, the judicial officer "may not impose  financial condition that results in the pretrial detention of the person".  18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted.  See 18 U.S.C. § 3142 (f)(1).  The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the  Defendant  and the safety of the community against any danger  posed by the Defendant's pretrial release.  See  United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the

appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce

"some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

a.  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

b.  whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

V.  <u>Discussion of Whether Detention is Warranted</u>

A.  <u>Mr. Green's History and Characteristics</u>

Mr. Green was born on April 23, 1976, in Brooklyn, New York, where he has remained his entire life.  Mr. Green graduated from vocational high school in 1994 and completed one year of Brooklyn Community College.

For the past nine years, Mr. Green has lived in the basement apartment at 153 East 92nd Street, in East Brooklyn.  Mr. Green's mother, brother and his two sisters live in that same building in another apartment.

Mr. Green is not married and has no children.

For the past three years, Mr. Green has been employed as a service technician in Brooklyn.

Mr. Green has no criminal record.

B.  <u>Mr. Page's History and Characteristics</u>

Mr. Page was born on February 16, 1977, in Brooklyn, New York, where he has resided for his entire life.  For the past twenty years, Mr. Page has resided with his mother at 1172 President Street, #20, in Brooklyn.

During high school, Mr. Page had a romantic liaison with a fellow student with whom he has a nine year old child. Mr. Page and the mother of his first child separated in 1994. From  1997 to 2001, Mr. Page had a romantic liaison with another woman with whom he has a five year old child.

10

Mr. Page has no information concerning his father.  Mr. Page's
mother is a clothing store manager.  Mr. Page has seven maternal
half-siblings, two of whom live in Brooklyn and the remainder live
in various states in the Southeastern section of the United States.

Since 2001, Mr. Page has been working as a body guard and for
the past eighteen months, has worked for one client in Manhattan.

In 1995, Mr. Page plead guilty to what appears to be a
misdemeanor offense of possession of a narcotic drug and  loitering
for which he received fifty hours of community service.  However,
Mr. Page was sentenced to fifteen days incarceration for violation
of his conditional release in that case.  There were numerous
defaults concerning this latter offense.  In 1996, Mr. Page pled
guilty to another minor drug offense for which he received a ninety
day sentence followed by five years probation.  Later in 1996, Mr.
Page was convicted of theft and criminal possession of a weapon for
which he received a six month sentence followed by five years
probation.  At the time of the offenses alleged in this Complaint,
Mr. Page had multiple charges pending against him in New York State
court.

     C.  Nature of the Offense and Weight of the Evidence

I have previously found probable cause for the offense charged
against Messrs. Green and Page in this Complaint.  Although both
Defendants profess no prior knowledge of the drug transaction
described in this Complaint, they were either present or in close

proximity when $200,000 was paid to the UCA for services rendered in transporting 105 kilograms of cocaine from Guyana to Boston and when the 105 kilograms of cocaine was delivered.  Furthermore, Mr. Green was present when a sample of the cocaine was examined and assisted in loading the cocaine into the Trailblazer.  Therefore, the circumstantial evidence against these Defendants is substantial.

D.  <u>Rebuttable Presumption</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Messrs. Page and Green were released, or the appearance of Messrs. Page and Green as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because these Defendants are charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act.  I have found probable cause exists for the offense charged against these Defendants in the Complaint.  Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of these Defendants or the safety of the community if they were released.  I find that these Defendants have produced nor proffered any credible evidence on their own behalf to rebut this presumption.  Without such

12

evidence, the presumption alone may justify detention. <u>United States v. Alatishe</u>, 768 F.2d 364, 371 (D.C. Cir. 1985); <u>United States v. Vires</u>, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that these Defendants have failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that they pose a danger to the community and a risk of flight.

### E.  Burden of Proof

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if these Defendants were released, or the appearance of these Defendants as required.

The Government's burden of proof is by:

1.  *Clear and convincing evidence* that these Defendants, if released, would pose a serious danger to any person or the community, or

2.  A *preponderance of the evidence* that these Defendants, if released, would not appear as required.

### F. <u>Whether Mr. Green Poses A Danger to the Community</u>

Mr. Green has no criminal record.  However, Mr. Green was recruited by Mr. Allen to act as protection in this case which involves the importation of a substantial amount of cocaine from

13

Guyana to Boston.  Although Mr. Green was never intercepted or identified as a participant in the conspiracy to import 105 kilograms of cocaine from Guyana to Boston, he was present with the primary target of this investigation, Mr. Allen, when Mr. Allen took delivery of a substantial amount of cocaine and paid the UCA a substantial amount of cash for having delivered the cocaine.  In fact, Mr. Green was present when Mr. Allen examined a kilogram sample of the cocaine and assisted Mr. Allen in transferring the cocaine to Mr. Allen's vehicle.  Mr. Green was to receive a substantial amount of cocaine for assisting Mr. Allen in this drug transaction.  Therefore, considering the totality of the circumstances and considering Mr. Green's involvement in this conspiracy, I find by clear and convincing evidence that he poses a danger to the community and that there are no conditions or combination of conditions that will assure the safety of any person or persons in the community if he were released.

G.  <u>Whether Mr. Green Poses A Risk Of Flight</u>

Mr. Green has substantial family ties to Brooklyn, has never lived anywhere other than Brooklyn and even if he faces a substantial period of incarceration if found guilty of the offenses charged in this Complaint, I cannot find by a preponderance of the evidence that he poses a risk of flight.

14

H. <u>Whether Mr. Page Poses A Danger to the Community</u>

Unlike Mr. Green, Mr. Page has a record of convictions for drug and other offenses and had multiple charges pending against him in New York State court at the time of the offenses alleged in the Compliant.  Mr. Page was also to receive a substantial amount of cocaine in exchange for providing protection to Mr. Allen in connection with this drug transaction.  Therefore, considering Mr. Page's criminal record coupled with his involvement in the delivery of 105 kilograms of cocaine to Mr. Allen, I find by clear and convincing evidence that Mr. Page poses a danger to the community and that there are no conditions or combination of conditions that I can impose to  assure the safety of any person or persons in the community if he were released.

I. <u>Whether Mr. Page Poses A Risk Of Flight</u>

Mr. Page has a substantial record of defaults.  Additionally, at the time of his arrest, after being advised of his Miranda rights, Mr. Page gave law enforcement officials an incredulous story to justify his having traveled with Mr. Allen and his Co-Defendants from New York to Boston.  Furthermore, because of his prior criminal record and the amount of cocaine involved, Mr. Page faces a substantial period of incarceration if he is found guilty of the offense charged in this Complaint.  Therefore, considering the totality of these circumstances,  I find by a preponderance of the evidence that Mr. Page poses a risk of flight and that there

are no conditions or combination of conditions that I could impose
that would assure his appearance in this Court as directed.

VI.  Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.  That Messrs. Green and Page be committed to the custody of
the Attorney General or his designated representative, for
confinement in a corrections facility separate, to the extent
practicable, from persons awaiting or serving sentences or being
held in custody pending appeal;

2.  That Messrs. Green and Page be afforded a reasonable
opportunity for private consultation with counsel; and

3.  On order of a court of the United States or on request by
an attorney for the Government, the person in charge of the
corrections facility in which Messrs. Green and Page are detained
and confined shall deliver Messrs. Green and Page to an authorized
Deputy United States Marshal for the purpose of any appearance in
connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION
FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. §
3145(b).


                              /s/Charles B. Swartwood, III
                              CHARLES B. SWARTWOOD, III

16

MAGISTRATE JUDGE