UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 04-10234-NMG


UNITED STATES OF AMERICA


v.


ANDRE PAGE


**REPORT AND RECOMMENDATION RE:**
**MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE**
**(DOCKET ENTRY # 165)**

**March 3, 2011**

**BOWLER, U.S.M.J.**

Pending before this court is a pro se motion to vacate, set
aside and or correct a sentence filed by petitioner Andre Page
("petitioner" or "Page") pursuant to 28 U.S.C. § 2255 ("section
2255").  (Docket Entry # 165).  On May 18, 2010, the United
States of America ("the government") filed a response to the
section 2255 motion addressing inter alia the ineffective
assistance of counsel claim.  (Docket Entry # 169).  Thereafter,
petitioner submitted a reply brief and a memorandum of law in
support thereof.  (Docket Entry # 171).


PROCEDURAL BACKGROUND

Petitioner raises five grounds as a basis for vacating the
conviction and sentence.  (Docket Entry ## 165 & 171).  First,

petitioner submits that counsel labored under an actual conflict of interest during the pretrial stages thereby causing irreparable harm or prejudice in violation of the Sixth Amendment. (Docket Entry ## 165 & 171).

The second and third grounds likewise allege ineffective assistance of counsel in violation of petitioner's Sixth Amendment rights. (Docket Entry # 165). Within these claims, petitioner argues that counsel was ineffective because: (1) counsel worked under a conflict of interest causing his absence at critical pretrial stages; (2) "because of his personal (fatherly) concerns . . . he defaulted into the dates set by the court and thereby affecting Petitioner's Speedy Trial Act right(s). . ."; (3) counsel's conflict of interest prevented him from being better prepared and more successful in his argument in support of severance; (4) counsel improperly advised petitioner regarding his plea options; (5) counsel was ineffective in his trial strategy; (6) counsel failed to object during sentencing proceedings; and (7) counsel failed to raise any of the above issues on appeal. (Docket Entry # 165). Petitioner also claims that in totality, counsel's inadequate performance resulted in prejudice to petitioner and violated his Sixth Amendment rights. (Docket Entry # 165).

Additionally, petitioner contends that his sentence should be set aside because it is plainly unreasonable in that it

imposes an incorrect mandatory minimum period of incarceration. (Docket Entry ## 165 & 171). Finally, petitioner suggests that the court improperly shifted the burden of proof to him in the jury instructions in violation of the Constitution and contrary to the laws of the United States. (Docket Entry # 165).

Petitioner requests an evidentiary hearing. An evidentiary hearing is not required. As discussed in greater detail infra and except with respect to the ineffective assistance of counsel claim regarding an alleged February 3, 2006 plea offer, even accepting petitioner's nonconclusory statements of fact as true to the extent not contradicted by the record, petitioner is not entitled to relief. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (setting forth evidentiary hearing standard in section 2255 proceeding); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ("court need not give weight to conclusory allegations"); Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989) (hearing not necessary if section 2255 motion "is 'conclusively refuted as to the alleged facts by the files and records of the case'"). While petitioner requests an evidentiary hearing, he fails in his burden to establish the need for such a hearing except with respect to the ineffective assistance of counsel claim regarding the alleged February 3, 2006 plea offer. See United States v. McGill, 11 F.3d at 225 (recognizing the

petitioner bears burden of establishing need for an evidentiary
hearing in a section 2255 proceeding).

The motion to vacate, together with the government's filings
(Docket Entry ## 168 & 169) and petitioner's response (Docket
Entry # 171), are therefore ripe for review.


<u>BACKGROUND</u> [1]

I.  <u>Investigation and Arrest of Page</u>

After months of undercover investigation, Page and co-
defendants Wallstein Dwayne Allen ("Allen"), Michael E. Green
("Green") and Aquaya Stephanie Perry ("Perry") (collectively:
"co-defendants") were arrested on June 5, 2004, in East Boston,
Massachusetts upon receipt of approximately 105 kilograms of
cocaine.  (Docket Entry ## 1 & 2).  Subsequently, a criminal
complaint issued against petitioner and co-defendants for
conspiracy to possess cocaine, a schedule II controlled substance
with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1)

---

[1]  "A habeas application must rest on a foundation of factual
allegations presented under oath, either in a verified petition
or supporting affidavits."  <u>United States v.LaBonte</u>, 70 F.3d
1396, 1413 (1st Cir. 1995) (further noting that facts in unsworn
memorandum "will not suffice"), <u>reversed</u> <u>on</u> <u>other</u> <u>grounds</u>, 520
U.S. 751 (1997); <u>accord</u> <u>United States v. Jordan</u>, 2000 WL 761766
at *2 (D.Me. April 10, 2000).  The majority of the facts are
taken from the affidavit of a United States Immigration and
Customs Enforcement Special Agent(the "Special Agent"), the June
17, 2004 memorandum and order and the records in the underlying
criminal proceeding.  (Docket Entry ## 2 & 9).  Additional
assertions in the supporting memorandum are accepted as true only
for purposes of showing that petitioner is not entitled to
section 2255 relief.

4

and 846. (Docket Entry # 2). The facts, as they relate to Page, are as follows.

On Friday, June 4, 2004, an undercover operative (the "UC") from the Department of Homeland Security, Customs and Immigration Enforcement ("ICE"), made a telephone call to Allen setting up a meeting for the following day at the Prudential Center in Boston. On Saturday, June 5, 2004, at approximately 3:15 p.m., Page and the co-defendants arrived at the Prudential Center parking garage in a 2004 gold Chevy Trailblazer and a 2004 silver Suburban. Page and the co-defendants then entered the mall together.

When Allen met up with the UC, the group split up and then reconvened outside of a restaurant. Outside of the restaurant, the UC split from the group and returned to his car while Page and the co-defendants returned to their two cars. The three cars met outside of the parking garage where Allen entered the UC's vehicle with two bags containing $200,000. The UC's car then led the other two vehicles, driven by Page and Green, to Piers Park on Marginal Street in East Boston. When they arrived at that location, the UC drove the Trailblazer, originally driven by Green, into the warehouse where he and Allen transferred seven bags of cocaine into the vehicle. Moments later federal agents arrived to make the arrests of Page and co-defendants.

While Page denies prior knowledge of the drug transaction, a confidential witness informed law enforcement officials that

Allen knew him well and recruited him specifically to provide him protection during the transaction.  In exchange for his services he was alleged to receive a substantial amount of cocaine.

II.  Subsequent Proceedings and Counsel's Representation

On June 5, 2004, petitioner and co-defendants had an initial appearance and the court issued an order of temporary detention. (Docket Entry # 7).  The court appointed an attorney ("appointed counsel") to represent petitioner.  (Docket Entry # 21).  On June 9, 2004, the court conducted petitioner's probable cause and detention hearing and on June 17, 2004, the court found probable cause and ordered petitioner detained pending resolution of the case.  (Docket Entry # 9).

On June 29, 2004, another attorney filed an appearance on behalf of Page ("second counsel")[2] and on the same day appointed counsel withdrew from the case.  (Docket Entry ## 10 & 12).  On December 23, 2004, Page filed a motion to discharge his second counsel which the court allowed on January 5, 2005.  (Docket Entry # 48).  On January 10, 2005, the court appointed an attorney ("third counsel") who shortly thereafter filed a motion to withdraw.  (Docket Entry # 55).  On January 28, 2005, the court allowed the motion and on February 15, 2005, the court

_____

[2]  On June 23, 2004, the docket reflects an update of attorneys including another attorney as representing Page.  On July 12, 2004, the docket reflects the termination of this attorney's representation of Page.

appointed another attorney ("trial counsel").  (Docket Entry #
59).

On August 11, 2004, a four count Indictment issued charging
petitioner and co-defendants with various drug violations.
(Docket Entry # 25).  The Indictment charged petitioner in Count
Two with conspiracy to distribute and possession with intent to
distribute cocaine in the amount of five kilograms or more in
violation of 21 U.S.C. § 846; and in Count Three with possession
of cocaine with intent to distribute five kilograms or more in
violation of 21 U.S.C. § 841(a)(1), and aiding and abetting in
violation of 18 U.S.C. § 2.  (Docket Entry # 25).

On December 23, 2004, petitioner filed a pro se motion to
discharge his second counsel and appoint new counsel (Docket
Entry # 48) as well as an affidavit supporting the discharge.
(Docket Entry # 49).  On January 5, 2005, the court allowed the
motion and appointed the third counsel to represent petitioner.
(Docket Entry # 52).  On January 13, 2005, Page's third counsel
filed a motion to withdraw (Docket Entry # 55) and on January 20,
2005, petitioner filed a motion to discharge his attorney and to
appoint new counsel.  (Docket Entry # 56).  On January 28, 2005,
the court allowed the motion to withdraw filed by Page's third
counsel.

On February 15, 2005, the court appointed trial counsel to
represent petitioner.  (Docket Entry # 59).  On January 17, 2006,

trial counsel filed a motion in limine to strike surplusage
(Docket Entry # 83) and on January 23, 2006, filed a motion to
sever and a supporting affidavit. (Docket Entry ## 84 & 85). On
February 3, 2006, trial counsel filed a proposed witness list
(Docket Entry # 93), a proposed voir dire (Docket Entry # 94) and
proposed jury instructions. (Docket Entry # 95).

On February 6, 2006, a jury trial for petitioner and Green
commenced. Petitioner testified on the fifth day of trial and on
February 15, 2006, the jury returned verdicts of guilty against
petitioner and Green. (Docket Entry # 107). The jury found
petitioner guilty of conspiracy under Count Two and specifically
found that the conspiracy involved five or more kilograms of
cocaine which was attributable to petitioner. (Docket Entry #
107). On May 22, 2006, trial counsel filed a sentencing
memorandum. (Docket Entry # 112).

On May 24, 2006, the court sentenced petitioner to 240
months imprisonment and ten years of supervised release. (Docket
Entry # 115). On June 12, 2006, petitioner filed a notice of
appeal. (Docket Entry # 117). On March 28, 2008, the First
Circuit affirmed petitioner's conviction. (Docket Entry # 158).
Petitioner's request for a rehearing and an en banc rehearing
were subsequently denied. (Docket Entry # 162). On September
11, 2008, the First Circuit issued a mandate affirming
petitioner's conviction. (Docket Entry # 164). The Supreme

Court denied Page's petition for issuance of a writ of certiorari on January 12, 2009.  On January 11, 2010, petitioner filed the section 2255 motion.  (Docket Entry # 165).

I.  <u>Section 2255 Review</u>

Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  <u>David v. United States</u>, 134 F.3d at 474 (citing <u>Hill v. United States</u>, 368 U.S. 424, 426-427 (1962)).  The fourth category "includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'"  <u>David v. United States</u>, 134 F.3d at 474.  Stated otherwise, "apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident."  <u>David v. United States</u>, 134 F.3d at 474.

Petitioner bears the burden of establishing the need for section 2255 relief.  <u>David v. United States</u>, 134 F.3d at 474.  Specifically, a petitioner must establish that his conviction was

9

imposed in violation of the Constitution or the laws of the
United States involving a "fundamental defect which inherently
results in a complete miscarriage of justice" or "an omission
inconsistent with rudimentary demands of fair procedure." Hill
v. United States, 368 U.S. at 426-427 (1962).  To obtain relief
under section 2255, petitioner "must clear a significantly higher
hurdle than would exist of direct appeal." United States v.
Frady, 456 U.S. 152, 166 (1982).

## II.  Ineffective Assistance of Counsel Claim

In support of the motion to vacate, petitioner states that
counsel labored under an actual conflict of interest during
critical stages of the pretrial proceedings.  (Docket Entry ##
165 & 171).  Specifically, Page's second counsel, who represented
petitioner from June 29, 2004, through January 5, 2005, had been
hired by Allen, a co-defendant in the case.  Allen eventually
cooperated with the government and plead out.  Petitioner filed a
motion to discharge counsel and appoint counsel (Docket Entry #
48) along with a supporting affidavit (Docket Entry # 49) citing
this conflict of interest to support a discharge.  Petitioner
submits that his second counsel's interest and loyalty was
divided between receiving his fee from Allen and representing
petitioner's interests.  (Docket Entry # 48).  Petitioner also
claims that trial counsel's family concerns created a conflict of

interest affecting performance in violation of the Sixth Amendment. (Docket Entry # 165).

The Supreme Court created an automatic reversal rule in the event that counsel is forced to represent co-defendants over a timely objection, unless the trial court has determined that there is no conflict. Holloway v. Arkansas, 435 U.S. 475, 487 (1978). In 2002, the Court in Mickens refused to extend this rule and held that "absent objection, a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation." Mickens v. Taylor, 535 U.S. 162, 162 (2002); see Bucuvalas v. United States, 98 F.3d 652, 655 (1st Cir. 1996); see also United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994).

Petitioner's first claim alleges a Sixth Amendment violation resulting from the trial court's failure to inquire into a potential conflict of interest about which it knew or reasonably should have known. To prevail on this claim, petitioner must first establish that a conflict of interest adversely affected counsel's performance. See Mickens v. Taylor, 535 U.S. at 162; Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) (because the petitioner did not object at trial, he needed to "demonstrate that an actual conflict of interest adversely affected his lawyer's performance").

Petitioner failed to object at trial and now fails to specify anything in the record that indicates the conflicts adversely affected Page's second counsel or trial counsel's representation of petitioner. He merely points to trial counsel's family problems as well as second counsel's interest in receiving payment from Allen to establish that petitioner's second counsel actively represented interests other than petitioner's interests. (Docket Entry # 171). This court recognizes "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party," but the case at hand differs from one involving multiple representation. Wood v. Georgia, 450 U.S. 261, 268-69 (1981). As in the instant case, "the existence of separate counsel interposes a buffer between the interests of co-defendants which does not exist when counsel is shared." Bucuvalas v. United States, 98 F.3d at 655. Where, as here, petitioner fails to object, there must be a showing of a conflict of interest that actually affected his attorney's performance. Moreover, there is "a presumption that 'the lawyer will subordinate his pecuniary interests and honor his primary professional responsibility to his client in the matter at hand.'" United States v. DiCarlo, 575 F.2d 952, 957 (1st Cir. 1978) (quoting Bucuvalas v. United States, 98 F.3d at 656). Petitioner fails to rebut that presumption here.

Petitioner next argues that his trial counsel and his appellate attorney ("appellate counsel"), were deficient and ineffective in their representation of petitioner. (Docket Entry # 165). Specifically, petitioner asserts deficiencies in the following areas: (1) trial counsel labored under a conflict of interest and was unable to focus appropriate time or energy on the instant case causing petitioner irreparable prejudice in violation of the Sixth Amendment; (2) trial counsel failed to properly object to the court's exclusion of time from May 26, 2005, through June 30, 2005, at the conference proceeding of May 26, 2005, and otherwise failed to honor petitioner's rights under the Speedy Trial Act; (3) trial counsel did not present a persuasive enough argument in favor of severance and should have properly moved for a mistrial following the court's refusal to sever the case; (4) trial counsel should have better advised petitioner about his choices relating to a trial or plea; (5) trial counsel should have been more aware and better prepared for Green's trial strategy; (6) trial counsel failed to object to a misstatement made by the court during sentencing; (7) appellate counsel did not raise the issues incorporated in this section 2255 motion on appeal; and (8) trial counsel's representation was deficient in its entirety. (Docket Entry ## 165 & 171).

The well established <u>Strickland</u> test governs Sixth Amendment ineffective assistance of counsel claims. <u>Strickland v.</u>

Washington, 466 U.S. 688 (1984); see also Duquay v. Spencer, 677 F.Supp. 2d 334, 346 (D.Mass. 2009).  To succeed under Strickland, petitioner must demonstrate that his attorney's performance was constitutionally deficient and prejudicial.  United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993); accord Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000).  An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable."  United States v. McGill, 11 F.3d at 266.  Moreover, "'Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Lopez-Nieves v. United States, 917 F.2d 645, 649 (1st Cir. 1990) (quoting Strickland v. Washington, 466 U.S. at 690).

Applying the Strickland standard, the First Circuit has emphasized that, "The Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of a reasonably effective assistance under circumstances then obtaining."  United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991); accord Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993); see also United States v. McGill, 11 F.3d at 227 ("to avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable"); Taveras v. United States, 230 F.Supp.2d 126, 132 (D.Mass. 2001) (observing that the Sixth

Amendment "guarantees proficient as opposed to perfect representation"). Courts avoid defining effective assistance because a strict definition would hinder the autonomy and leeway counsel have for trial strategy and tactics. United States v. Natanel, 938 F.2d at 10.

Under the prejudice prong, it is incumbent on petitioner to demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Phoenix v. Matesanz, 233 F.3d at 81 (quoting Williams v. Taylor, 529 U.S. at 390). A court may only deem a trial lawyer's performance as constitutionally deficient when counsel's conduct subverts the judicial process in a way that "the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. at 686. For a criminal defendant to succeed on this ground, he must demonstrate deficient performance and show that prejudice occurred as a result. See Id. "The performance standard is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." United States v. Natanel, 938 F.2d at 309-10; see United States v. Bosch, 584. F.2d 1113, 1121 (1ˢᵗ Cir.1978). Bare assertions of ineffective assistance of counsel that are contrary to the record are without merit and insufficient. Id.

With respect to the first argument, trial counsel's son suffered an injury that petitioner argues unfairly distracted him from properly representing petitioner in the instant case. (Docket Entry ## 165 & 171). Petitioner argues that "it seems unconscionable, impractical and inordinately presumptuous on the government's part to assume, without factual support of the record, that [trial counsel] could have the fortitude . . . to fully concentrate on and properly manage petitioner's legal interests." (Docket Entry # 171). This court finds, however, that despite his son's injury, trial counsel's representation was professional, proficient and conducted in good faith. He located several favorable witnesses (Docket Entry # 93) and filed a motion to continue trial (Docket Entry # 75), a motion for excludable delay (Docket Entry # 79) and a motion to sever (Docket Entry # 84) with supporting briefs. He also filed a sentencing memorandum. (Docket Entry # 112). Although trial counsel missed a pretrial conference on July 18, 2005, evidence from the record fails to show that he was distracted or unable to perform his duties as petitioner's counsel.

Further, at no time during his case did petitioner attempt to remove trial counsel as his counsel or complain about the quality of his representation. Petitioner fails to show deficient performance or establish a reasonable probability that but for trial counsel's attention devoted to his son's injuries

or the missed pretrial conference, the result of the proceeding would have differed.

In the second argument, petitioner submits that trial counsel's inattention and lack of focus disadvantaged him and caused an involuntary forfeiture of his rights under the Speedy Trial Act. Petitioner complains about trial counsel's failure to object to an exclusion of time from May 26 to June 30, 2005. Petitioner further points out that his co-defendants, represented by counsel on July 18, 2005, sought and consented to an exclusion of time. Petitioner also notes, correctly, that the court expressed concern about the Speedy Trial Act at the November 18, 2005 pretrial conference. At that conference, trial counsel agreed to exclude the time between November 18, 2005 and the ultimate trial date. Counsel is presumed to have made the decision to exclude time in the exercise of reasonable professional judgment. See, e.g. Lopez-Nieves v. United States, 917 F.2d at 649. Based on the record, there is little reason to question the decision. There is also an inadequate showing of prejudice. Accordingly, the second alleged deficiency does not merit section 2255 relief.

The third argument petitioner makes is that trial counsel did not argue persuasively enough for severance at the May 26, 2005 hearing. Trial counsel made a reasonable and proficient argument in the motion to sever along with a signed affidavit on

17

January 23, 2006.  The court denied the motion.  Notwithstanding petitioner's argument to the contrary (Docket Entry # 171), an attorney is not deficient or ineffective simply because his client did not approve of the outcome as "the performance standard is that of a reasonably effective assistance under circumstances then obtaining."  United States v. Natanel, 938 F.2d at 309-10.

The fourth argument submitted is the assertion that trial counsel should have "better advised Petitioner about his choices" relating to a trial or plea.  (Docket Entry # 165, p. 5(d)).  In a reply brief, petitioner alleges that the government made a plea offer on February 3, 2006, to trial counsel before the February 6, 2006 commencement of trial for ten years that was rejected by trial counsel.  (Docket Entry # 171).  According to petitioner, trial counsel rejected the ten year offer before discussing the details with petitioner.  (Docket Entry # 171, p. 29).

The only other evidence of plea negotiations for petitioner is noted in status reports dated November 5 and December 8, 2004 (Docket Entry ## 41 & 45) and transcripts of the conferences on these dates.  (Docket Entry ## 41, 45, 147 & 148).  Trial counsel did not represent Page until February 15, 2005.  (Docket Entry # 59).  The May 27, 2005 status report reflects that Page was prepared to proceed to trial.  (Docket Entry # 70).

Hence, it is only the allegation that trial counsel rejected the February 3, 2006 plea offer before discussing the plea with petitioner that gives this court pause. In order to address the merits of this ineffective assistance of trial counsel claim as to the rejected plea, this court suggests that the court conduct an evidentiary hearing limited to whether an offer was made on February 3, 2006, as well as what advice, if any, and what communications, if any, trial counsel and petitioner had regarding the February 3, 2006 plea offer. Such a hearing would be limited to what took place on or after February 3, 2006, including whether petitioner rejected any offer. See generally Owens v. United States, 483 F.3d 48, 60-61 (1st Cir. 2007) ("because Owens' allegations are not implausible, and because they could, if true, entitle him to relief, the district court's decision to deny an evidentiary hearing was an abuse of discretion"); David v. United States, 134 F.3d at 477.

The fifth argument is that trial counsel should have been more aware of Green's strategy of lessening his guilt by placing more blame on petitioner. In the January 23, 2006 motion to sever (Docket Entry # 84), trial counsel states that Green's trial strategy was to exculpate Green by inculpating petitioner. Petitioner also cites this as grounds to support trial counsel's ineffectiveness regarding the motion to sever. The motion to sever shows that trial counsel was not only aware of the strategy

19

but actively raised this issue in defense of petitioner. Accordingly, the court remedied the problem by redacting the post-arrest statement of Green. (Docket Entry # 88). The ruling subsequently negated any prejudice petitioner may have incurred from Green's trial strategy. Again, trial counsel demonstrated sound professional judgment in his effort to use Green's strategy to sever petitioner's case.

The sixth argument is twofold. First, petitioner asserts an ineffective assistance of counsel claim where trial counsel "failed to object to the court's misstatements concerning the statutory command applicable in this instance with regard to the sentence imposed." (Docket Entry # 165). Petitioner also argues that the sentencing court incorrectly imposed a mandatory minimum of 20 years in violation of the Fifth and Sixth Amendments. (Docket Entry # 165). The government maintains there was no ineffective assistance and no miscalculation with regard to the sentencing guidelines the court outlined for petitioner. (Docket Entry # 169).

On May 24, 2006, after determining the guideline sentencing range was 240 to 293 months (with a 120 month mandatory minimum), the court sentenced petitioner to 240 months imprisonment and ten years of supervised release. The court applied the proper guidelines in this instance. Ultimately, the court did not add to petitioner's offense level in regard to an aggravating role,

avoided the government's recommendation and sentenced him under
U.S.S.G. § 2D1.1, giving him the lowest possible sentence within
the range with the possibility of release within ten years.  The
court did not sentence petitioner to the statutory maximum nor
did it view petitioner as a career offender, demonstrating that
the court was disposed to view the facts with regard to
sentencing in a light that was favorable to petitioner.  Hence,
trial counsel's performance was not ineffective in this regard.
In other words, petitioner fails to show any reasonable
probability that the result would have been different if trial
counsel had objected to the alleged misstatement.  Additionally,
trial counsel's sentencing memorandum and argument likely helped
the court depart from the government's recommendation of 360
months to life.  (Docket Entry # 112).  The failure to make an
objection did not undermine the fairness of the sentencing
proceeding.  <u>See</u>, <u>e.g.</u>, <u>David v. United States</u>, 134 F.3d at 447
(summarily discounting ineffective assistance of counsel claim in
section 2255 motion by noting that the petitioner received
appropriate sentence and therefore sustained no prejudice).

In addition to arguing ineffective assistance of counsel as
grounds for relief under section 2255 with regard to sentencing,
petitioner claims that the court plainly erred in its stated
reasons for the 20 year minimum mandatory sentence imposed on
petitioner.  As discussed above, the 20 year mandatory minimum

sentence imposed by the court was a proper application of the guidelines.

Petitioner's seventh argument is that appellate counsel was ineffective during the appeal by not bringing up the claims mentioned in the section 2255 motion. (Docket Entry # 165). The government responds that appellate counsel[3] was under no obligation to raise any of these allegations on appeal. (Docket Entry # 169). The government submits, however, that appellate counsel argued many of the issues addressed in the now pending section 2255 motion on appeal, including the court's refusal to sever petitioner's case from Green. (Docket Entry # 169); see United States v. Page, 521 F.3d 101, 109-10 (1st Cir. 2008).

"The Strickland test applies to claims of ineffective assistance of appellate counsel as well as trial counsel." Duguay v. Spencer, 677 F.Supp.2d at 346; see, e.g., Smith v. Robbins, 528 U.S. 259, 288-89 (2000); Ramirez-Burgos v. United States, 313 F.3d 23, 28 (1st Cir. 2002) (applying Strickland to a claim of ineffective appellate counsel). At the time, Page appealed the decision only, not the sentence. (Docket Entry # 160). The record reflects that appellate counsel actively and thoroughly argued for petitioner on appeal. (Docket Entry #

---

[3] Although the government's memorandum names trial counsel as counsel during appeal, it was actually appellate counsel who represented petitioner for the majority of the appeal process. The First Circuit's docket reflects that appellate counsel was added as counsel for petitioner in June 2006.

22

160). Petitioner fails to show that his representation in this instance was so inferior as to be objectively unreasonable.

Petitioner's final argument that trial counsel's overall deficient representation was ineffective is controverted by the record. Petitioner attempts to aggregate isolated incidents which standing alone are not evidence of ineffective assistance of counsel. Those incidents taken in their totality are not more persuasive of a Sixth Amendment violation than if they were viewed individually. As discussed above, based on the record, trial counsel consistently demonstrated reasonable professional judgment in his representation of petitioner and in doing so did not impede a fair and just result. Except for a need to further develop the record relative to the fourth ineffective assistance argument, petitioner fails to set forth a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief.

In addition to the claim of ineffective assistance of counsel, petitioner alleges that the court's misstatement to the jury on February 14, 2006, provides a basis for section 2255 relief. Petitioner submits that the court improperly instructed the jury that the burden of proof would fall on petitioner rather than on the government.

It is well settled that, "a single instruction . . . may not be judged in artificial isolation, but must be viewed in the

context of the overall charge." <u>Rogers v. Carver</u>, 833 F.2d 379, 381 (1st Cir. 1987) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). Although at one point the court incorrectly stated that "the burden is on the defendant to prove beyond a reasonable doubt that each defendant is guilty," this was an isolated error that was not likely to have any bearing on the jury's understanding of the process or ultimate deliberations. (Docket Entry # 169).

Viewing the instructions as a whole, the court repeatedly and correctly stated that the burden of proof fell on the government rather than on petitioner. As the government points out, on the very page of the transcript in which the misstatement is found, the court correctly mentions the burden at least five times. Petitioner, therefore, has not shown that he was denied his constitutional rights to a proper and fair trial because of this isolated misstatement of the standard among the instructions as a whole which included numerous correct statements of the standard. Nor has petitioner established any evidence in the record that undermines confidence in the outcome.

CONCLUSION

Based on the foregoing reasons, this court **RECOMMENDS**[4] that the section 2255 motion (Docket Entry # 165) be **DENIED** and that all of the grounds for relief be **DISMISSED** except for the ineffective assistance of trial counsel ground relative to the February 3, 2006 rejected plea. It is further **RECOMMENDED**[5] that the court conduct an evidentiary hearing limited to this aspect of the ineffective assistance of trial counsel ground for relief.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objection within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

[5] See the previous footnote.